Good morning, and may it please the Court, my name is Ray Salian, I represent Appellant Kevin Long, and I'd like to reserve three minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. The District Court's order granting summary judgment should be reversed, and the case should be remanded for further proceedings. The Court below entered a judgment of over $8 million against Mr. Long without a trial, despite the fact that he introduced mostly unrebutted testimony that negated the elements of MGM's claims and established facts sufficient to support his own defenses. First, Mr. Long raised a genuine issue of material fact over whether he actually executed the casino markers on which MGM bases its claims. This is independent of his intoxication defense, and is on its own sufficient to have required the Court to allow the case to go to trial. Counsel, what was the evidence that he did not execute the markers? Well, I'd point to at least five examples from the record, Your Honor. First, the markers were dated two years after Mr. — Point us to the — well, the fact that they were dated later is not — does not raise a material issue of fact if he, in fact, allowed the hotel to date the markers whenever they were presented for payment. Would you agree? I agree that he executed a document which allowed the hotel to leave the date line blank in the casino markers. However, Mr. Long, in his declaration, affirmatively says, I dispute the authenticity and validity of the casino markers. He says — But didn't he make several payments on the markers and, in fact, pay some of them off in full? So if he disputed the authenticity, what — you know, did he do that before making these payments? Your Honor, the — with respect to the payments that Mr. Long made shortly after his visits to the hotels, at that point, at least within the record, it actually isn't clear whether Mr. Long was apprised of or knew what the total amount of debt MGM was claiming from him. In fact — But that doesn't matter in terms of whether or not he disputed the authenticity of them. So is it your argument that he only disputed the authenticity once he realized how much MGM was requesting to be repaid? Well, the actual markers, the physical markers that MGM is using to base its claims, they weren't actually presented to him. There's no evidence that he was actually shown these markers until MGM's motion for summary judgment. So the only communications that we actually have in the record are letters that MGM sent Mr. Long several years after the visits in question. So before then, we have no idea what communications were taking place between the casino and Mr. Long. We don't know what was communicated to him. There was no reason to believe, at least from the record we have before us, that he was presented with a situation where he could have denied the authenticity of any markers. Now — Well, just a second. I'm looking at his affidavit, and he says, I do not dispute that I executed the markers. He says, I dispute the amount, and I dispute the fact that they're enforceable because I was intoxicated when I signed them. I think — and I believe this is in — The specifics is, I do not dispute I executed the markers. That's right, Your Honor. And I think — I think a reasonable juror could conclude that, you know, he was in Vegas, he was plied with alcohol. He has some sense that he probably executed and agreed to some gambling debts. And he paid them off. I thought you started off by saying he disputed whether he even signed the markers. He does dispute that he signed the two disputed markers that are at issue in this case, Your Honor. And he says — But there — He says — sorry, Your Honor. No, go ahead. He states that on page 80 of the excerpts of record, he says that he — there's a — he says that he's examined the instruments produced as part of MGM's motion and disputes the validity and authenticity of those instruments as I was not present in Las Vegas on the days those instruments are dated. And — But that is the question of him giving the MGM permission to date them at the time they were going to be presented. So that's a different issue in terms of whether or not he challenges the fact that he executed them. If I could quickly respond to that issue, Your Honor. So it is true, and we're not disputing, that MGM had the right to leave the dateline blank, and it had the legal right and statutory right to fill in that date later. So that's correct. But the point is, even if they're allowed to do that, that doesn't establish as a matter of factual certainty that he, in fact, was present and did approve those markers, Your Honor. So an example I would — And that takes us back to what Judge Mallory read, that he doesn't dispute that he executed the markers. He doesn't dispute that he executed casino markers with MGM. So he doesn't dispute that he incurred some debts related to gambling. But he does dispute the specific markers that are at issue here. How did he arrive at the $1,864,675 number, which happened to cover all the small markers plus one of the markers that's in dispute? How did he come up with that number? Your Honor, as I suggested earlier, we don't have any communications that conclusively establish what happened that resulted in these payments and these partial payments being made. It looks like part of it was he basically handed over casino chips before he left on his trip. And I think a reasonable juror could infer from the record that's present before the court that Mr. Long understood that he had incurred some debts, made some payments, and at some point realized, wait, maybe there's a disagreement here on the total amount of payments that he actually agreed to. Again, there's no indication that anyone communicated the amount that MGM was claiming he had agreed to pay until several years later in January 2021. So since we're at the summary judgment stage, while this panel has identified some factual questions that he might need to address in front of the fact finder, I think the inferences have to be drawn in his favor at this point. And that's what the district court in this case failed to do. Additionally, Your Honors, going back to the point of whether Mr. Long established sufficient facts to contest the validity of the markers, first of all, his denial in and of itself is sufficient. It's a statement from a person with personal knowledge, and that has to be credited in the non-movement's favor at the summary judgment stage. He states that he does not believe he would have executed markers for the amounts that MGM's claiming. Again, it's possible that a jury or fact finder might not find that credible, but the fact of the matter is their credibility determination has to be left to the fact finder and shouldn't have been left to the, done by the district court. He was given over a million dollars worth of complimentary amenities, which kind of puts together a story here where Mr. Long was given copious amounts of alcohol to the point where he couldn't remember what happened the night that he supposedly executed these markers. He knows for sure he was given some things for free. He knows that he incurred some gambling debts, but really it had to be a finder of fact to the markers that MGM's now seeking to enforce. Why did Long wait until the response to the motion for summary judgment to raise the intoxication defense if that was a concern? Why wasn't it raised in 2021? Well, first of all, there was a very short period of time between when MGM first sent the letters to Mr. Long, and actually there's no evidence that he received or reviewed those letters, but the first communication that we have that communicated the total amount of the debt was in January 2021. A few months later in, I think it's, I believe it's July 2021, they've already filed their complaint. So this is a matter of months. Now, compare that to the amount of time it took MGM to realize that it believed that it had an unpaid debt. This trip happened in 2018, and then they wait until 2021 to actually send some sort of written communication indicating that he owes this amount of money. So there's a- They were trying to, weren't they trying to collect in the interim? Well, there's nothing in the record that says that. I thought they presented the markers to his bank. They presented the markers to his bank during the same months that they were sending the letters to him. So if you look, the demand letters were sent in January and March of 2021, and I believe the markers were presented to the bank, I think it's February and March 2021. So it's around the same time when all of this activity is going on. So he's, so they're sending him letters and they're trying to get the money from his bank all around the same time, years after his trip. So at that point, you know, this is a trip that's taken place years later. He's, you know, he's testified in an uncontradicted fashion that during this trip he was so intoxicated he can't even remember what happened. I think- Is that asserted in his answer to the complaint filed in 2021? It's not in the answer, Your Honor. There are affirmative defenses listed, and other than that, there are just general denials of the allegations. Why not? Why is that not one of the affirmative defenses listed in 2021? Why is that not coming up until 2022? Well, the only response I have to that, Your Honor, is at that point, you know, this was, you know, we were trying to counsel. I'm not exactly sure what the discussions were at that time. But at that point, you know, this was, MGM in January made its demand, filed its lawsuit in July. At that point, I think it's reasonable to say that Mr. Long and his counsel were probably still undergoing an investigation. And I acknowledge that perhaps it would have been prudent to amend the answer to include a defense and spell out the intoxication issue. But there's no law that says that this is a defense that has to be included in the answer. More importantly, MGM never raised this as a problem. So if there was a procedural defect in the way that intoxication was raised, that should have been brought up in the lower court proceeding. And as we know, trial courts often grant leave to amend with liberality. So had this issue been brought up back then, there might have been a solution here where we would have simply seen an amended answer and we would have seen more specific defenses. Instead, what MGM did was two months before the discovery cutoff, it files a motion for summary judgment. From what I can tell, it didn't even really take discovery. Doesn't, you know, file... That's right, Your Honor. Which gives rise to an independent grounds to affirm because MGM moved to strike his affidavit because he would not agree to be deposed. Well, Your Honor, I think that doesn't provide an independent ground in this case because the lower court actually denied the motion to strike. And the denial of the motion to strike would be reviewed under the abuse of discretion standards. So in this case, and there are additional problems with the raising of the deposition as an issue here. And I see my time's about to run out, but I'm happy to answer additional questions. So the main problem with the deposition is while there were meet and confer discussions where Mr. Long declined to appear for a deposition, there was no attempt to compel a deposition. There was no motion for sanctions. Frankly, MGM just assumed that it could skip all of those steps and ask for a motion to strike and that motion was denied. So there's no basis for the court at this point to revisit the court's exercise of discretion and essentially treat the motion to strike as having been granted. And unless the panel has other questions, I'd like to reserve the remainder of my time for rebuttal. All right, Joseph. Good morning. Jared Rickard on behalf of Appellee MGM Grand Hotel, LLC. Your Honors, my opposing counsel started his argument with a challenge to the appellant's signatures on the markers. If the appellant had raised a question about his signatures or claimed that his signatures had been forged, that probably would have been a genuine issue of fact that would require a trial. But he didn't do so. He didn't challenge his signatures. This court has already decided in the Las Vegas Sands versus Nemi case, markers are treated as commercial paper. Commercial paper is self-authenticating under FRE 902 subpart 9. So appellant didn't raise challenges to his signatures. He raised an authentication challenge and FRE 902 9 answers that authentication challenge. But even if we dig further, the authentication challenge is not, again, based on his signatures. It was based on his claim that he wasn't in Las Vegas on the days that the markers were dated. And that question is easily answered by MGM Grand's statutory rights, which are set forth in Vatterby's statute 463-368. That statute gives MGM Grand the ability as a gaming licensee to add the information necessary to make the negotiable instrument, i.e. the markers, payable. That includes the date. That includes the bank account information and other necessary information. All that is required under Nevada law for a valid marker is the signature of the patron and the amount of the debt. So there is no question about his signature. There is no question about authenticity, and so that obviously cannot be an issue of fact. And Judge Molloy, you hit the nail on the head. Even if it maybe was, there was some sort of a specter of an issue here. The appellant, in his own declaration, admits that he signed the markers here. And so I think that that lays that question to rest. I think the real issue here and the real issue that the court should be looking at is the ratification defense. And there is and can be no dispute that the appellant ratified his markers with MGM Grand. He ratified them both with his affirmative conduct in making payments and with the fact that he failed to promptly disavow them after regaining his sobriety. And in the brief... I'm going to ask you, at what point was he given copies or advised as to the amount of the markers after he left the casino? So, first... And presumably regained sobriety, if you look at his defense. Sure. And if the court's focusing on after he left the casino, which is also what the district court focused on, the district court basically said, okay, I'm going to assume for the sake of summary judgment that you raised a sufficient incapacity defense. And I'm going to assume for the sake of summary judgment that you were incapacitated during the entire duration of your months-long stay at MGM Grand, which is a stretch, to say it lightly. But even making that assumption, I'm going to find that as a matter of law, your conduct that happened after you left the casino forms a valid ratification, because that conduct is not disputed here. And that... What's the answer to the question as to when he was informed as to the total amount that he owed the hotel? When was he told? So there can be no dispute of fact, no question, that at least by January 26, 2021, he was receiving certified letters, correspondence from MGM Grand, stating the specific total amount that he owed. Subsequently, in March of 2021, MGM Grand sent him another certified letter. And that letter is located in the record at page 101, and I think it's important that this court take a look at that letter, because in that letter, the MGM Grand was basically giving the appellant another bite at the apple, a second chance to raise a challenge to these markers. And what the MGM Grand said in that letter is said, quote, unless you dispute the validity of this debt, or any portion thereof, within 30 days after receipt of this letter, we will assume that the claimed debt to be valid. The appellant didn't respond to that letter. He remained silent. And he didn't say anything, and he didn't challenge the debt, certainly not within 30 days. As Judge Thomas pointed out earlier, the first time, the very first time that appellant claimed that he was intoxicated, and his counsel began making this incapacity argument, because the appellant didn't say he was incapacitated, he just said that he was drinking, the first time that that happened was in this February 22, 2022, so almost a year later, declaration that was submitted in opposition to the motion for summary judgment. And so, again, the district court got it right. The district court, again, said, look, I'm going to assume your intoxication defense is valid. I'm going to just look at this ratifying conduct that happened afterwards. And if we sort of march through the timeline with respect to both the affirmative payments and the failure to disavow, there really can't be a dispute of fact here. Now, with respect to the affirmative payments in the briefing, the appellant tries to make this argument, well, MGM didn't book the payments and credit them towards the $5 million marker. Let's look at what MGM did. Let's see how they acted. The problem with that, Your Honors, is the law of ratification doesn't care about what MGM did. The law of ratification focuses on what the appellant did as the arguably ratifying party. Nevada law follows the restatements, specifically the restatement second of contracts. Section 16 talks about intoxication. Section 380 talks about ratification. I think one of the most important takeaways from those provisions is that a contract entered into by a previously incapacitated party is voidable. It's not void. And the ability to disaffirm that contract goes away forever if the previously incapacitated party, quote, manifests an intention to affirm or acts inconsistently with disaffirmance. And I would submit there is no better example of conduct that manifests an intent to affirm or that's inconsistent with disaffirmance than making partial payments to the tune of $2 million. These markers were the first two markers that the appellant took out at MGM Grand. He took out the $5 million marker on October 13th of 2018, and he took out the $2.995 million marker on October 17th. Now, while he was still a guest at MGM Grand, they applied some of his front money to credit to the overall debt. I think there was a front money payment on October 25th of $64,000 and then another front money payment of $200,000 on November 30th, 2018, when he checked out. But more importantly, your honors, after he checked out, after he regained sobriety, he continued to make payments. The first payment was in January of 2019 to the tune of $1 million. So he had to wire money or write a check to MGM Grand for $1 million while he's now arguably regained his capacity. In February of 2019, he made another payment, again, a significant amount of money of $500,000. And then finally, on November 30th of 2020, two years to the day after he checked out of the MGM Grand, he made another payment of $100,000. So I would submit there can be no question of fact at all that this is affirmative ratification of the markers through his affirmative conduct, his objective outward conduct, which is what ratification focuses on, of him ratifying the agreements. And again, that's just part of the story. There's also the fact that he failed to disaffirm them promptly after regaining sobriety. Counsel, is there any substance to opposing counsel's argument that the MGM waited so long to try to collect on the markers? No, your honor. This is just the standard industry procedure, as you know from the, I think, Zagola's case. Essentially what the MGM does, like any other gaming licensee, is it allows patrons to take out these markers, and then it gives them an opportunity to pay them back. It gives them quite a bit of an opportunity to pay them back. And so at the time that MGM finally lost patience was in January of 2021 when it sent that demand correspondence. Those demand letters were sent not only as a firm reminder of these obligations, but they were also sent so that MGM could take advantage of the statutory penalties set forth in NRS 41-620. Under that statute, they needed to send him certified letters specifically stating the amount and specifically demanding the payment. And again, in the March letter, they gave him 30 days to raise a challenge to the markers, which he did not do. So your honor, going back to his failure to disaffirm, the standard there is he has to do it promptly. That's the standard set forth by the Nevada Supreme Court in the Lava Bear case. So upon regaining sobriety, you have to promptly disaffirm. And Webster's defines the phrase promptly as without delay, immediately, or very quickly. And again, there can be no question of fact that the appellant did not act promptly here. I mean, again, under no stretch of the imagination or no stretch of the term promptly, could he be considered to have acted in that manner having waited two and a half years to, having his defense and his opposition to the motion for summary judgment? I don't know if there's anything in the record about this, but tell me if there is. So the last marker is in November, or October, rather, 2018. He pays back some of it with chips. Then in January 2019, basically a month or two later, he pays a million. Month later, he pays $500,000 in February. Then nothing until October of 2020. That's what, 19 months later, he pays $100,000. What was going on during those 19 months? Anything that's in the record? There's nothing in the record, Your Honor. I can provide my speculation, which is that the casino was still communicating with the patron and trying to collect his debt and trying to work with him. Because here's another important part of the story. He checks out of the MGM grant on November 30th of 2018. He actually comes back to the property a month later and checks in again, and stays two nights from December 30th to January 1st, 2019. Again, at that time that he comes back, he's probably gambling. There's nothing in the record about that, but we can probably surmise that that's the case. But the more important part of the story, and what makes a difference in this case that it's not part of the record, is what's not in the record is the appellant raising any previous markers. Him speaking up and saying, hey, I was incapacitated at that time in those previous markers. I was incapacitated, and I don't believe that I should have to pay this debt, and I'm hereby challenging this debt. He remained silent then, and he also remained silent while he was making those payments that we talked about previously. Those three payments that occurred between January of 2019 and November of 2020. And it continued even further after he received the demand correspondence from MGM, and after he received that March letter where he was given 30 days to raise a challenge. And again, the first time he raised it was in opposition to the motion for summary judgment. And so the district court got it right. It gave him every benefit of the doubt, and there was no remaining questions to be answered here. Again, if he had raised a claim that somehow his signature was forged, that probably would have been a question of fact, but that wasn't part of this case. And La Bobera requires that he raises his challenge to capacity promptly upon becoming sober, which he did not do here. I think the only other sort of question that's presented by this appeal, and since I have two minutes left, I'll briefly get into it, is this claim that the conversion claim is not sufficient under Nevada law. And I think it is an interesting argument, and there is definitely some logic to it. Basically, I've heard some courts refer to this as the bag of money doctrine, i.e. there has to be some sort of specific funds that are specifically identifiable, like a bag of money, or gold bars, or gold coins. And the only thing I would point out about that, Your Honors, is that the appellant weighed that argument. He didn't raise it before the district court. When the MGM moved for summary judgment against him, he didn't even discuss the conversion claim. He just basically made these sort of general arguments about capacity. And so, having not raised those arguments before the district court, he certainly can't come before this panel and start arguing it now. And the other thing that I would say is that Nevada hasn't adopted the quote unquote bag of money doctrine. It's still an open question under Nevada law, and I would also submit that if the court looks at the Evans v. Dean Witter case, which is one of the leading Nevada Supreme Court cases on the question of conversion, there the court's not specifically saying that you don't have to have specific funds, but it seems to be implicitly recognizing that you don't. Because in that case, you had a trustee who took money from a bank account, nonspecific funds that belonged to somebody else, and was being accused of conversion. There was no challenge or no issue raised by the Supreme Court that somehow, just because these were nonspecific funds that were in a bank account, it wasn't valid under Nevada law. And the last point I would make, Your Honors, before I sit down, is that even if the court decides to dig into the weeds on this issue, and even if you decide to decide it, I think there is an argument here that these are specific funds, because on the face of the marker, on the face of the agreement, you have the appellant specifically agreeing that he had sufficient funds in his account to pay these markers on demand. And so once he signed these markers, and once he made that covenant, he agreed that these funds would stay in his account, and by spending them, depleting them, he converted them, and they're there by specific funds. All right. Thank you, Counselor, you've exceeded your time. Your Honor, I'll focus briefly on the ratification point, since that's what my colleague spent most of his time on, unless the panel would prefer to discuss another issue. My colleague presented what I would describe as a pretty decent, compelling, closing argument for a jury trial about why Mr. Long ratified the markers that are at issue here. But that's not the standard. The standard is what happens when you draw every inference in Mr. Long's favor. When you do that, what you have is you have testimony from Mr. Long, whose credibility you must assume, that says that he has no recollection of executing these markers, he would never agree to execute markers at the amounts specified, and that if he did do something that resembled executing a marker, he did so under the influence of alcohol to the degree that he doesn't even remember what happened. So a jury, hearing those facts, could reasonably conclude that he never actually executed those markers. And Nevada law agrees in this case. Because if you look at the La Barbera and Tofani cases that are cited in the briefs, there, in both decisions, you have circumstances where the evidence of ratification is, frankly, much stronger than in this case. In the Tofani case, for example, there isn't merely silence on the part of the casino patron. The casino patron actually affirms the debt. He says, yes, I know I owe you the money, and I will pay it back, but I have to figure out how. And then his wife discovers that he went to Vegas and accrued these debts, and suddenly he's saying, oh, I must have been too drunk. And in that case, the court still found that summary judgment was inappropriate. That's what should happen here. Counsel, you've exceeded your time. Could you please wrap up? Yes. Unless the panel has any further questions, I'll wrap up. Thank you. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, Melloy, THOMAS